ELEVENTH CIRCUIT DOCKET NO. 23-13610-J

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

VICTORY MEDIA GROUP, LLC,

Plaintiff/Appellant,

v.

CITY OF ROSWELL, GEORGIA and
JACKIE DEIBEL, *in her official capacity
as Director of Planning and Zoning*,

Defendants/Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT FOR
THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
THE HONORABLE STEVEN D. GRIMBERG

---

## <u>BRIEF OF APPELLANT</u>

---

E. Adam Webb
Georgia Bar No. 743910
G. Franklin Lemond, Jr.
Georgia Bar No. 141315
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, Georgia 30339
(770) 444-9325
(770) 217-9950 (facsimile)

*Counsel for Appellant*

11th Circuit Docket Number 23-13610-J

## <u>CERTIFICATE OF INTERESTED PERSONS</u><br><u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellant hereby certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case on appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

Bohorquez, Nicolas, Counsel for Appellees

Cowan, Amy, Counsel for Appellees

Deibel, Jackie, Appellee

Freeman, Mathis & Gary, LLP, Counsel for Appellees

Galberaith, Steve, Member of Appellant

Grimberg, Steven D., District Court Judge

Hartrampf, Jack, Investor in Appellant

Lemond, Jr., G. Franklin, Counsel for Appellant

Maine, Dana K., Counsel for Appellees

Perkins, Beth, Member of Appellant

i

City of Roswell, Georgia, Appellee

Victory Media Group, LLC, Appellant

Webb, Edward Adam, Counsel for Appellant

Webb, Klase & Lemond, LLC, Counsel for Appellant

DATED this 28th day of February, 2024.

Respectfully submitted,

BY:    */s/ E. Adam Webb*
        E. Adam Webb
        Georgia Bar No. 743910
        G. Franklin Lemond, Jr.
        Georgia Bar No. 141315
        WEBB, KLASE & LEMOND, LLC
        1900 The Exchange, S.E.
        Suite 480
        Atlanta, Georgia 30339
        (770) 444-9325

        *Attorneys for Appellant*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Victory Media Group, LLC requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Eleventh Circuit Rule 34-3(c).  Oral argument will assist the Court in considering the important issues raised herein, including whether local governments can enforce prior restraints on speech activity, refuse to allow administrative appeals, and then have a case dismissed as unripe, thus avoiding all accountability and delaying speech indefinitely.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS ......................................................................... iv

TABLE OF CITATIONS ...........................................................................v

STATEMENT OF JURISDICTION .................................................... xii

STATEMENT OF THE ISSUES ........................................................1

STATEMENT OF THE CASE................................................................2

STATEMENT OF FACTS ...............................................................3

STANDARD OF REVIEW ..................................................................9

SUMMARY OF THE ARGUMENT ...................................................9

ARGUMENT ...............................................................................10

      I.     The District Court Erred In Finding Victory's Claims Were Not Ripe ...................................................................10

      II.    The District Court's Ripeness Determination Was Based On Erroneous Factual Determinations That Are Contrary To The Record ....................................................17

      III.   The District Court Erred By Dismissing Victory's State Law Claims With Prejudice................................................22

      IV.   This Court Should Decline To Consider Arguments Not Reached By The District Court ........................................24

CONCLUSION ...................................................................25

## TABLE OF AUTHORITIES

*Beaulieu v. City of Alabaster*,
    454 F.3d 1219 (11th Cir. 2006) ................................................................13

*Club Madonna, Inc. v. City of Miami Beach*,
    924 F.3d 1370 (11th Cir. 2019) ................................................................9

*Cowen v. Ga. Sec'y of State*,
    960 F.3d 1339 (11th Cir. 2020) ................................................................24

*Crosby v. Paulk*,
    187 F.3d 1339 (11th Cir. 1999) ...........................................................23, 24

*Digital Props., Inc. v. City of Plantation*,
    121 F.3d 586 (11th Cir. 1997) ............................................................ *passim*

*Doane v. Tele Cir. Network Corp.*,
    852 F. App'x 404 (11th Cir. 2021) ...........................................................24

*Edwards v. Prime, Inc.*,
    602 F.3d 1276 (11th Cir. 2010) ................................................................ vii

*Elend v. Basham*,
    471 F.3d 1199 (11th Cir. 2006) ................................................................9

*Fulton County v. Action Outdoor Advert., JV*,
    711 S.E.2d 682 (Ga. 2011) .......................................................................16

*Graham v. State Farm Mut. Ins. Co.*,
    193 F.3d 1274 (11th Cir. 1999) ................................................................20

*Granite State Outdoor Advert., Inc. v. Cobb County*,
    193 F. App'x 900 (11th Cir. 2006) ...........................................................23

*Herzog v. Castle Rock Entm't*,
    193 F.3d 1241 (11th Cir. 1999) ................................................................20

*Lucero v. Trosch*,
    121 F.3d 591 (11th Cir. 1997) ........................................................22, 23, 24

*Mergens v. Dreyfoos*,
    166 F.3d 1114 (11th Cir. 1999) ...................................................................23

*Nat'l Advert. Co. v. City of Miami*,
    402 F.3d 1335 (11th Cir. 2005) ........................................................... *passim*

*Recycle & Recover v. Ga. Bd. of Natural Resources*,
    466 S.E.2d 197 (Ga. 1996) ..........................................................................16

*Statesboro Publ'g Co. v. City of Sylvania*,
    516 S.E.2d 296 (Ga. 1999) ..........................................................................23

*Tilley Props. v. Bartow County*,
    401 S.E.2d 527 (Ga. 1991) ..........................................................................16

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966) .....................................................................................23

## STATEMENT OF JURISDICTION

This appeal arises from a July 22, 2021 ruling from the Northern District of Georgia granting summary judgment to the City of Roswell. The district court's order is a "final decision," giving this Court jurisdiction over the appeal. 28 U.S.C. § 1291; *also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1288 (11th Cir. 2010) ("An appeal from a final judgment of the district court, one disposing of all the claims and defenses of all the parties in a lawsuit, poses no jurisdictional problem").

## STATEMENT OF ISSUES

1.    Can an applicant which received a written denial of its sign applications – and duly pursued all administrative remedies available to it – be denied Article III standing because its claims are purportedly not ripe?

2.    Did the district court err by concluding that Victory's claims were not ripe based upon erroneous findings of fact?

3.    Does a district court err by dismissing with prejudice a litigant's claims under state law – claims which are plainly ripe and well founded – based on a finding that the litigant's federal law claims were not ripe under Article III?

**STATEMENT OF THE CASE**

This appeal presents an important question in the realm of municipal sign permitting. Does an applicant which received a hand-written denial at the top of each sign application and which diligently pursued an administrative appeal, only to be refused the opportunity to appeal, have claims that are ripe for adjudication? The answer to this question should be "**Yes**". Unfortunately for Appellant Victory Media Group, LLC ("Victory"), the district court concluded to the contrary in granting the motion for summary judgment filed by Defendants City of Roswell, Georgia and Jackie Diebel, in her capacity as Director of Planning and Zoning (collectively, "Defendants" or "City"). The district court's conclusion was based on the misapplication of this Court's prior decisions regarding ripeness and based on key erroneous findings of fact.

Even if the district court had been correct in its ripeness determination, it should not have dismissed Victory's well-founded claims under Georgia law that the City's regulations were invalid. For example, claims based on Georgia's Zoning Procedures Law are universally accepted and dealt with on the merits by the Georgia courts with an identical procedural background. Thus, the district court erred by dismissing Victory's claims under Georgia law, with prejudice, *sub silentio*. Reversal is warranted.

**Procedural History**

After having its sign permit applications denied, and being denied the opportunity to appeal these denials to the City's Board of Zoning Appeals, Victory filed suit in the Superior Court of Fulton County on January 25, 2022. *See* Doc. 1-1. Victory sought mandamus relief under Georgia law, a finding that the City's Sign Ordinance was unconstitutional under both the United States and Georgia Constitutions, and a finding that the City's Sign Ordinance was invalid under Georgia's Zoning Procedures Law. *Id.* Defendants removed the case to federal court on March 3, 2022. *See* Doc. 1. Following removal, Defendants filed an Answer. *See* Doc. 5. Following the entry of a scheduling order (Doc. 10), the parties engaged in discovery.

On December 16, 2022, Victory filed its Motion for Partial Summary Judgment and Statement of Material Facts in support. *See* Docs. 16-17. On December 16, 2022, Defendants filed their Motion for Summary Judgment and supporting documents. *See* Doc. 18. On January 27, 2023, the parties filed their respective opposition briefs (Docs. 21-22), and on February 10, 2023, the parties filed their replies. *See* Docs. 23-24. On August 30, 2023, the district court heard oral argument. *See* Doc. 25.

3

Following oral argument, Victory filed a request for judicial notice.  *See* Doc. 26.  Defendants opposed Victory's request (Doc. 28) and Victory filed a reply.  *See* Doc. 29.  On September 28, 2023, the district court entered an order granting Victory's request for judicial notice, denying Victory's request for partial summary judgment, and granting Defendants' request for summary judgment.  *See* Doc. 30.  Victory timely appealed.  *See* Doc. 32.

### Statement of Facts

The following facts were established below: Victory is a limited liability company that specializes in operating signs that are used by businesses, individuals, churches, charities, and public agencies to post commercial and noncommercial messages.  *See* Doc. 17-1, ¶ 3.  Victory spent significant time in Roswell and interacted with local businesses and organizations that would benefit from more signage and engage the many motorists on the City's commercial roadways.  *Id.* at ¶ 5.  Victory met with several local landowners and business owners concerning the possibility of leasing their properties to erect signs.  *Id.* at ¶ 6.  The local merchants and property owners were enthusiastic about the prospect of additional signage, both for advertising and for additional income.  *Id.* at ¶ 7.  Modern signs, including those with LED displays, are an invaluable medium for speech activity.  For example, they are the best way to convey emergency

messages – such as Amber Alerts, evacuation instructions, and disaster information – to motorists. *Id.* at ¶ 8.

In Georgia, the Georgia Bureau of Investigation, Georgia Emergency Management Agency, and Georgia Department of Transportation ("GDOT") have all reached agreements to use these modern billboards and have praised the sign industry. GDOT and the federal government have completed thorough safety studies and have confirmed the safety of electronic billboards so long as they are operated in accordance with GDOT's rules. *Id.* at ¶ 9.

After meeting and negotiating with landowners in Roswell, Victory reached agreement with numerous landowners who stand to earn substantial income if a sign is posted on their property. *Id.* at ¶ 10. These properties are not residentially zoned and are adjacent to some of the City's most heavily trafficked roadways. They are suitable properties for the signs proposed by Victory. *Id.* at ¶ 11.

Before submitting any applications to the City, Victory carefully reviewed Section 10.3 "Signs" of the City's Uniform Development Code ("UDC") (hereinafter "Sign Ordinance") and noticed that there were certain types of signs that were exempt from permitting based on the message to be displayed on the sign. *Id.* at ¶ 12; *see also* Section 10.3 ("Signs") of the Roswell UDC (Doc. 17-2). Victory also noticed that different sign types like a "single post sign" or a "double

post sign" were allowed to have different heights and sizes based on the message to be displayed on the sign. *See* Doc. 17-1, ¶ 13.

Victory prepared applications for various types of signs based on what was allowed and what was exempt from the City's permitting requirement. *Id.* at ¶ 14. On November 22, 2021, Victory visited the Roswell City Hall and submitted 18 sign permit applications. *Id.* at ¶ 15; *see also* Victory Sign Applications (Docs. 17-3 to 17-20). Eleven of the applications requested "Public Notice" or "Public Interest" signs, which are exempt from permitting in the City based on the message to be displayed on the sign. *See* Doc. 17-1, ¶ 16; Docs. 17-3 to 17-13. Even though such signs were exempt from permitting based on the content that would appear on the signs, Victory could not take the financial risk of starting to build such expensive signs without the blessing of the City. *See* Doc. 17-1, ¶ 17. The remaining seven applications were for various types of signs allowed under Section 10.3 of the UDC such as a "single post sign" or a "double post sign" and sought signs of various heights and sizes. *See* Doc. 17-1, ¶ 18.

Victory's sign permit application packages contained all of the information and documentation required by the City for a sign permit application. *Id.* at ¶ 19. When Victory visited the City to submit its applications, Victory brought checks to tender the necessary fee associated with each application. *Id.* at ¶ 20. Victory met with City staff regarding the applications. This was an in depth discussion during

6

which Victory and City Staff paged through the application packages. *Id.* at ¶ 21.

At first, City staff began to review each application packet and made notes with the intent of logging each proposed sign location into the City's computer system. *Id.* at ¶ 22. During the review process, City staff made the determination that Victory's applications were for "billboards" – that is, signs conveying messages that would not necessarily pertain strictly to the business on the premises – and attempted to refuse to accept the application packages. *Id.* at ¶ 23. When Victory asked City staff for a reason why they were trying to refuse to process the applications, City staff advised Victory that "billboards" or "off-premise signs" were "not an allowable sign type in the City of Roswell." *Id.* at ¶ 24. When Victory questioned City staff about this determination, it was told that, because each of the proposed signs would not be "advertising the services on the property, it would be an off-premise sign" and that the City does not allow signs with such messages. *Id.* at ¶ 25. City staff further advised that the content of a sign "has to deal with products and services offered on that lot" and that a sign's content cannot be for services or things that are not offered at that location. *Id.* at ¶ 26.

Ultimately, City staff denied all 18 applications by writing "Not an allowed sign type per UDC 10.3" on the front page of each sign application. *Id.* at ¶ 27; *see also* Docs. 17-3 to 17-20. Even though Victory was prepared to submit the

application fees associated with the 18 applications, the City did not accept Victory's offer to pay any and all permitting or application fees and returned Victory's application packets and checks. *See* Doc. 17-1, ¶ 28. After having its applications denied, Victory attempted to file an administrative appeal as allowed by Section 13.12.1 of the City's UDC. *Id.* at ¶ 29. Initially, City staff advised that Victory was not allowed to appeal the denial of the applications and refused to provide Victory with a hard copy of the appeal form. *Id.* at ¶ 33. After involving the Roswell City Attorney, the City determined that Victory could submit an administrative appeal and staff provided Victory with the requisite form. *Id.* at ¶ 34.

The City also determined that it did not have an administrative appeal form even though it was required to have such a form pursuant to the City's own UDC. *Id.* at ¶ 35. Therefore, the City gave Victory a copy of the variance form and requested that Victory fill out the form "as best it could" and to include a "Letter of Intent" along with the application form. *Id.* at ¶ 36. Thereafter, pursuant to Section 13.12.2 of the UDC, Victory timely submitted 17 complete administrative appeal applications to the City. *Id.* at ¶ 37; Docs. 17-21 to 17-37. With each appeal application, Victory submitted a check for $200 to cover the administrative appeal fee. *See* Doc. 17-1, ¶ 38.

City staff accepted all of the administrative appeal applications and the checks for $200 to cover the appeal fee. *Id.* at ¶ 39. Subsequently, on January 5, 2022, Victory received a letter from the Roswell City Attorney advising that the City would not permit Victory to pursue the administrative appeals. *Id.* at ¶ 40; Jan. 5, 2022 Letter (Doc. 17-38). Thereafter, Victory filed suit. *See* Doc. 1-1.

## <u>STANDARD OF REVIEW</u>

This Court reviews *de novo* questions concerning subject matter jurisdiction, including standing and ripeness. *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1378 (11th Cir. 2019); *also Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006); *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). This Court reviews a district court's order granting a motion for summary judgment *de novo*, construing all facts and making all reasonable inferences in the light most favorable to the non-moving party. *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1338 (11th Cir. 2005).

## <u>SUMMARY OF ARGUMENT</u>

Victory received a written denial at the top of the first page of each of its sign applications that said "Not an allowed sign type per UDC 10.3." The City of Roswell refused to accept the requisite application fee from Victory and refused to keep the applications. Thereafter, Victory sought an administrative appeal to the City's Board of Zoning Appeals. The City initially refused to allow Victory to

appeal, but the City Attorney eventually convinced the City to accept Victory's appeals. Subsequently, however, the City refused to allow Victory to pursue an appeal before the Board of Zoning Appeals. With no other administrative remedies available, Victory filed suit.

Despite Victory's diligence in submitting applications that were denied in writing and its dogged pursuit of an administrative appeal, the district court concluded that Victory's claims were not ripe and granted summary judgment to the City. In doing so, the court misapplied this Court's precedent regarding ripeness. Moreover, the court's ripeness determination was based on several key factual errors that require reversal.

The district court further erred by dismissing Victory's claims under Georgia law with prejudice without conducting any analysis as to the substance of these claims. Notably, Victory filed the case in state court and made well-founded state law claims. These should never have been dismissed with prejudice without review on the merits. For all of these reasons, reversal is warranted.

## ARGUMENT AND CITATION OF AUTHORITY

## I.     The District Court Erred In Finding Victory's Claims Were Not Ripe.

The district court's grant of summary judgment because Victory's claims were not ripe is contrary to this Court's precedent and inconsistent with the facts. Reversal is necessary.

10

On November 22, 2021, Victory visited the City of Roswell to submit its sign permit applications. *See* Doc. 17, ¶ 13 (citing Doc. 17-1, ¶ 15). Though the City initially refused to accept the applications, staff eventually accepted and denied the applications by hand writing "Not an allowed sign type per UDC 10.3" on the front page of each. *See* Doc. 17, ¶¶ 21, 25.

Victory then submitted applications for administrative appeals pursuant to Section 13.12.2 of the UDC. *See* Doc. 17, ¶¶ 32, 35. Victory even submitted the requisite $200 administrative fee for each appeal. *Id.* at ¶ 36. The City accepted Victory's administrative appeals, only to subsequently advise Victory that it would not be allowed to pursue these appeals. *Id.* at ¶¶ 37-38. In response to having its applications denied and being denied an opportunity to appeal, Victory timely petitioned the Superior Court of Fulton County. Under these facts, Victory's claims were ripe for determination.

The district court's reliance on *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586 (11th Cir. 1997), in support of its holding that Victory's claims were not ripe misses the mark. In *Digital Properties*, the plaintiff's attorney ***attempted*** to file remodeling plans. *Id.* at 588. A clerk in the building department first directed the attorney to seek "environmental approval" before submitting the plans and also meet with her supervisor, the chief building inspector. *Id.* Adhering to the clerk's advice, the plans were discussed with the supervisor, who instructed the

11

plaintiff's representatives to visit the zoning department. *Id.* Upon reaching the zoning department, the plaintiff's representatives spoke with the assistant zoning technician and informed her of the plaintiff's intent to change the use of the building from a restaurant to an adult book and video store. *Id.* The plaintiff's representatives also submitted a written description of the proposed project. The exact nature of the assistant zoning technician's response was disputed but the plaintiff did not contest that its representatives were advised to speak with the Director of Building and Zoning because the scope of the assistant zoning technician's job did not encompass accepting building plans. *Id.* at 588-89. Following this exchange, the plaintiff's representatives immediately left ***without consulting with the Director***. *Id.* at 589. Rather than attempt to pursue an administrative appeal, the plaintiff filed suit. *Id.*

The district court dismissed the case on ripeness grounds, finding that the plaintiff's rush to the courthouse was premature and that the plaintiff had failed to exhaust its administrative remedies. *Id.* On appeal, this Court held:

> A challenge to the application of a city ordinance does not automatically mature at the zoning counter. In order for the city to have "applied" the ordinance to Digital, a city official with sufficient authority must have rendered a decision regarding Digital's proposal. Aside from merely expressing her initial reaction to the proposal, [the assistant zoning technician] suggested that [plaintiff] should meet with her supervisor to obtain a decision regarding zoning approval; following this suggestion would have had no more of a "chilling" effect on Digital's First Amendment rights than did their following the

12

suggestion of the building department clerk that the men meet with the Chief Building Inspector.

. . .

Digital's impatience precluded the formation of a concrete case or controversy. Without the presentation of a binding conclusive administrative decision, no tangible controversy exists and, thus, we have no authority to act.

*Id.* at 590.

In contrast, Victory did not merely submit a written description of its proposal, but rather submitted comprehensive sign permit application packages that contained all of the information and documentation required by the City. *See* Doc. 17, ¶ 17. Victory was not advised by anyone at the City that the staffers it met with were not authorized to accept sign applications as part of their job description.[1] Instead, after an extensive meeting, authorized staff members denied the applications by writing "not an allowable sign type in the City of Roswell" on each. *Id.* at ¶ 22. Victory did not refuse to meet with anyone. Lastly, Victory filed for administrative appeals, only to have the City reject them. *Id.* at ¶¶ 27-38.

City of Roswell officials with sufficient authority not only rendered a

---

[1] Given that there is **zero** evidence that the staff member that Victory met with on November 22, 2021 was not authorized to issue a decision on Victory's applications, the district court's suggestion that this Court's decision in *Beaulieu v. City of Alabaster*, 454 F.3d 1219 (11th Cir. 2006), is distinguishable because "there was no question that the officer in *Beaulieu* had the authority to enforce the ordinance" is based on facts not in the record. This is but one of many factual errors made by the district court. *See* Part II, *supra*.

13

decision on each sign permit application, but subsequently rendered a decision not to allow Victory to pursue an administrative appeal.  Unlike the plaintiff in *Digital Properties*, Victory had a concrete case or controversy.

The district court's reliance on *National Advertising Co. v. City of Miami*, 402 F.3d 1335 (11th Cir. 2005), is also erroneous.  There the sign company went straight to court after receiving a ***verbal denial*** from a zoning clerk and without pursuing an administrative appeal.  *Id.* at 1338.  Applying the Eleventh Circuit's decision in *Digital Properties*, the district court dismissed the case on the grounds that it was not ripe.  *Id.*  This Court affirmed, concluding "it is clear that [the sign company] never properly pursued its claim through the administrative process that the City's zoning ordinance made available to them."  *Id.* at 1339.  The Court further held the applicant's claim was not ripe because "[a]lthough [the applicant's] initial request for a permit was not granted by the clerks in Miami's zoning department, [the applicant] never received a final, written denial of their applications." *Id.* at 1340.

Here, as noted above, Victory obtained a final, written denial from the City in the form of a written denial on each application ***and*** a written denial of its request to seek administrative review.  *See* Doc. 17, ¶¶ 17, 38.  Victory did not go straight to court after a verbal denial.  *National Advertising* is inapposite.

Also fundamental to this Court's decision in *National Advertising* was the

conclusion that the sign company would not sustain undue hardship as a result of the withholding court consideration. 402 F.3d at 1341. This Court held that "[i]t would have been far easier, and quicker, for National to have exhausted its administrative remedies or received a final written denial of its application instead of rushing to the federal courts for relief." *Id.* Given that Victory obtained a final written denial and exhausted its administrative remedies, Victory was greatly prejudiced by the court's withholding a determination on the merits.

The prejudice suffered by Victory is readily seen through the City's conduct after Victory applied, was denied, and then applied for administrative appeals, which the City refused to allow. On December 8, 2021, the City of Roswell adopted a 90-day moratorium on ground sign applications at a specially called meeting of the Mayor and Council. *See* Doc. 26-1. Due to the moratorium, if Victory had reapplied after receiving the December 27, 2021 letter from the City Attorney – as the City argued that Victory should have done for the first time at oral argument[2] – the City would have refused to accept the applications based on the moratorium. The moratorium was later extended on February 28, 2022 (Doc. 26-2) and again on May 23, 2022 (Doc. 26-3) until the City adopted the new sign ordinance in August 2022 that corrected all of the constitutional deficiencies in the

---

[2] *See* Hearing Transcript, pp. 4:19 – 5:3.

City's Sign Ordinance that had been identified by Victory.

Victory has also suffered significant legal prejudice through the district court's withholding of consideration of its claims. Under Georgia law, the submission of a then-proper application for a permit gives an applicant a vested right to consideration of the application under the law in existence at the time the application is filed. *Fulton County v. Action Outdoor Advert., JV*, 711 S.E.2d 682, 685 (Ga. 2011) (unanimous Georgia Supreme Court holding billboard company seeking permits has vested right to consideration of application under law then in existence). The Georgia Supreme Court held that, "in the absence of any valid Fulton County sign ordinance, there was no valid restriction on the construction of signs in Fulton County at the time the sign companies' applications were filed, and the sign companies obtained vested rights upon filing of proper applications." *Fulton County*, 711 S.E.2d at 685; *see also Recycle & Recover v. Ga. Bd. of Natural Resources*, 466 S.E.2d 197, 199 (Ga. 1996); *Tilley Props. v. Bartow County*, 401 S.E.2d 527, 528-29 (Ga. 1991).

Under Georgia law, Victory had a vested right to have its applications considered under the law in existence at the time the applications were filed. The district court's dangerous expansion of this Court's ripeness precedent has deprived Victory of this right by forcing it apply for permits under an ordinance adopted nine months after Victory originally applied and under an ordinance that the City

16

crafted in response to the legal deficiencies previously identified by Victory.  The City's gamesmanship should not have been rewarded by the court.

Furthermore, the district court's determination that Victory's claims were not ripe will set a dangerous precedent.  Never has this Court held that an applicant who receives a written denial on its application paperwork ***and*** pursues its administrative remedies – only to have a municipality deny the applicant the opportunity to present its appeal to the board of zoning appeals – does not present claims that are ripe.  Allowing the district court's decision to stand will extend this Court's holdings in *Digital Properties* and *National Advertising* too far.  What more does an applicant whose submissions are denied and whose applications for administrative appeals have been rebuffed have to do in order to seek redress from courts?  The district court's decision should be reversed.

## II.    The District Court's Ripeness Determination Was Based On Erroneous Factual Determinations That Are Contrary To The Record.

In finding that Victory's claims were not ripe, the district court held that Victory's burden to show injury was higher than a party engaged in core political speech because "where some signs were related to 'public interest,' but most were commercial."  *See* Doc. 30, pp. 10-11.  This factual determination is contrary to the record evidence in two key respects.  First, the testimony from Steve Galberaith, one of Victory's owners, made it clear that Victory specialized in operating signs

that are used by businesses, individuals, churches, charities, and public agencies to post commercial and ***noncommercial messages***.  *See* Doc. 17-1, ¶ 3.  Second, the district court's conclusion that most of Victory's signs were for commercial activity is incorrect.  According to the City's own Statement of Material Facts, 11 of the 18 applications submitted by Victory were for either "Public Notice" or "Public Interest" signs as those terms are used in the City's Sign Ordinance.  *See* Doc. 18-8, ¶¶ 16, 19, 21, 23-26, 28, 30-32 (stating these applications were for either "Public Notice" or "Public Interest" signs).  Since the majority of Victory's applications (61.1%) were for signs other than commercial signs, the district court's conclusion to the contrary was erroneous.  And because the district court used this erroneous factual determination to conclude that Victory should be subjected to a more strenuous legal inquiry as to whether or not its claims were ripe – *see* Doc. 30, p. 10 – reversal is necessary.  Since the record evidence established that Victory operates signs that engage in core political speech and sought signs that would display core political speech, the district court erred by concluding that Victory's burden of showing injury was higher.

The district court's ripeness finding was also based on its acceptance of the City's argument that Victory's meeting with City staff on November 22, 2021 was merely a preplanning meeting.  The City's argument in this regard, however, was only advanced at oral argument and the City never introduced any evidence to

support this claim.  At oral argument, the City made the following argument:

> The reality is that plaintiffs met with the planner, Julie Martin, at a preplanning meeting and she informed them that if submitted, those applications would be denied because they failed to meet certain provisions of the sign ordinance. At that time she did initially refuse to accept those applications. However, she later informed the plaintiff come back, submit, pay the application fees and go through the process, and if they're denied, you have the right to appeal through the Board of Zoning Appeals, the BZA.

*See* Hearing Transcript, pp. 4:19 – 5:3.  Victory made it clear to the Court that the City's claims regarding a "preplanning meeting" were merely attorney speculation not supported by record evidence, by arguing the following:

> None of this is in the record. You know, he just made up all that. None of that's in the record. Julie Martin said these things. She doesn't have a declaration in the record, she doesn't have an affidavit in the record. She didn't say - this is all just attorneys - a preplanning meeting, advisory note, none of that's in the record. That's all just attorney speculation.

*Id.* at 26:25 – 27:5.  After being caught advancing an argument that lacked any record evidence to support it, the City conceded that Victory was right.  *Id.* at 49:10-11 ("I will concede that that is not in the record, Your Honor").  Despite the City's admission that there was no evidence to support this assertion, the district court accepted the City's argument that Victory simply met with City staff on November 22, 2021 rather than actually applying.  *See* Doc. 30, pp. 2-3 (referring to Victory's submission of 18 applications as a "meeting" with the City); p. 11 ("Victory alleges that it intended to apply at the meeting").  This conclusion is

19

directly contrary to Victory's testimony on the issue. *See* Doc. 17, ¶ 13 ("On November 22, 2021, Victory visited the City of Roswell and submitted 18 sign permit applications"); Doc. 17-1, ¶ 15 (same).

As the non-movant, Victory was entitled to have the evidence viewed in the light most favorable to it with all justifiable inferences were to be drawn in its favor. *E.g.*, *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by courts in evaluating summary judgment. *E.g.*, *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). The court erred in resolving the dispute as to what occurred on November 22, 2021 in favor of Defendants.

The district court also reached its conclusion that Victory's claims were not ripe by concluding that Victory:

> knew, or should have known, that the meeting concerning the signs did not constitute submission of official applications, much less a denial. If they had used those decades of experience to diligently pursue the City's application process and either received a conclusive decision or built a clear record of City obstruction and gamesmanship (which they raised without any record evidence for the first time at oral argument), their rights perhaps would have been vindicated far sooner, and at far less cost.

*See* Doc. 30, p. 14. But there is no evidence in the record establishing that Victory knew or should have known that its interaction on November 22, 2021 did not

constitute submission of official applications or a denial. That is merely what the City alleged. *See* Doc. 18-8, ¶ 9 ("Plaintiff never submitted any purported sign application to the City"). Victory vigorously disputed this claim. *See* Doc. 21-7, ¶ 9 (denying allegation and citing paragraphs 15, 21-27 of Galberaith affidavit (Doc. 17-1) in support of its denial of the City's allegation).

And the district court's suggestion that Victory failed to "buil[d] a clear record of City obstruction and gamesmanship" is also contrary to the record evidence. The record evidence shows that while Victory was prepared to submit the application fees associated with the 18 applications, the City refused to accept Victory's offer to pay any and all permitting or application fees. *See* Doc. 17-1, ¶ 28. The evidence also showed that in response to Victory's efforts to file an administrative appeal pursuant to Section 13.12.1 of the City's UDC, City staff initially advised that Victory was not allowed to appeal the denial of its applications and refused to provide Victory with an appeal form. *Id.* at ¶ 33. Only after Victory got the Roswell City Attorney involved was Victory allowed to appeal. *Id.* at ¶ 34. Victory put together and submitted 17 administrative appeal applications to the City with checks for $200 to cover the administrative appeal fees. *Id.* at ¶¶ 37-39; Victory Administrative Appeal Applications (Docs. 17-21 to -37). But after going through all of that effort, Victory ultimately received a letter from the Roswell City Attorney advising that the City would not permit Victory to

21

pursue an administrative appeal.  *See* Doc. 17-38.  Moreover, Victory subsequently demonstrated that the City's obstructionist tactics were all part of the City's plan to adopt an emergency moratorium (that was twice extended) and then adopt a revised Sign Ordinance.  *See* Doc. 26 (requesting judicial notice of City's moratorium); Doc. 30 (granting same).  Ample evidence of the City's obstruction and gamesmanship was introduced by Victory.

## III.  The District Court Erred By Dismissing Victory's State Law Claims With Prejudice.

The district court also erred by granting summary judgment without considering Victory's claims under Georgia law.  Victory's complaint included a claim under Georgia law for mandamus, a claim that the City's Sign Ordinance violated the Georgia Constitution (which is more protective of free speech than the United States Constitution), and a claim that the City's Sign Ordinance was not adopted in accordance with Georgia's Zoning Procedures Law.  *See* Doc. 1-1, ¶¶ 40-48, 59-62, 64, 71-81.  Yet the district court did not render a decision on any of these state law claims, instead only dismissing Victory's claims because they were not ripe under federal jurisprudence.  *See* Doc. 30, pp. 5-12.

The district court dismissed these claims *sub silentio*.  Because the district court failed to discuss Victory's state law claims, it "would be difficult for [this Court] to review the issue in this context."  *E.g.*, *Lucero v. Trosch*, 121 F.3d 591,

598 (11th Cir. 1997).  Because this Court "cannot meaningfully review the decision of the district court regarding the claims for relief under the Georgia Constitution" it should "vacate the dismissal of those claims and remand for further proceedings."  *See Granite State Outdoor Advert., Inc. v. Cobb County*, 193 F. App'x 900, 906-07 (11th Cir. 2006).

In *Cobb County*, the district court granted summary judgment to the defendant, but failed to offer any substantive analysis of the plaintiff's claim that the county's sign ordinance was unconstitutional under Georgia law.  193 F. App'x at 906.  This Court reversed the dismissal of the claims under Georgia law, holding:

> The district court may have concluded, on the one hand, that the arguments of Granite State under the Georgia Constitution lacked merit because they failed under the First Amendment.  *But see CAMP*, 451 F.3d at 1280 ("Georgia courts depart from federal constitutional free speech analysis for . . . content-neutral speech . . . because Georgia requires the 'least restrictive means' to regulate content-neutral speech." (quoting *Statesboro Publ'g Co. v. City of Sylvania*, 271 Ga. 92, 516 S.E.2d 296, 299 (1999))).  The district court may have declined, on the other hand, to exercise supplemental jurisdiction because it "dismissed all claims over which it ha[d] original jurisdiction." 28 U.S.C. § 1367(c); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966).  "[I]f the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims."  *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (citations omitted).  When a district court declines to exercise supplemental jurisdiction because only state law claims remain, the district court should dismiss the state law claims without prejudice "so that the claims may be refiled in the appropriate state court."  *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th

23

> Cir. 1999).  "As a practical matter, the district court is in the best
> position to weigh . . . whether it is appropriate to exercise supplement
> jurisdiction."  *Lucero*, 121 F.3d at 598.  Because we cannot
> meaningfully review the decision of the district court regarding the
> claims for relief under the Georgia Constitution, we vacate the
> dismissal of those claims and remand for further proceedings
> consistent with this opinion.

Similar results are warranted here.  The district court's dismissal of Victory's

claims for mandamus relief, violation of the Georgia Constitution, and violation of

Georgia's Zoning Procedures Law must be vacated.

## IV.  This Court Should Decline To Consider Arguments Not Reached By The District Court.

Below, the City asserted that Victory was barred from bringing its claims

against Defendants by the justiciability doctrines of ripeness, mootness, standing,

and sovereign immunity.  *See, e.g.*, Doc. 18-1.  Due to the district court's

conclusion as to ripeness, it did not reach Defendants' other arguments.  *See

generally* Doc. 30.  Any suggestion by Defendants for this Court to consider these

arguments on appeal should be rejected because such issues are best addressed in

the first instance by the district court after remand.  *E.g.*, *Doane v. Tele Cir.

Network Corp.*, 852 F. App'x 404, 407 (11th Cir. 2021) (remanding matter for

district court to consider issues in the first instance); *Cowen v. Ga. Sec'y of State*,

960 F.3d 1339, 1346 (11th Cir. 2020) (declining to consider arguments "because

the district court should address those issues in the first instance on remand").

Since this matter is ripe for determination, remand is appropriate so these issues can be considered by the district court for the first time.

## CONCLUSION

Victory's claims were and are ripe. It received a hand written denial at the top of each application from City staff whose authority to render the determination was never questioned. And rather than run straight to court without pursuing administrative remedies, Victory applied for administrative appeals, appeals that the City refused to allow. Victory's diligence requires a finding that its claims are ripe. The district court's conclusion to the contrary threatens to establish dangerous precedent and reward the tactics employed by the City of Roswell. Notably, the ripeness holding was also based on incorrect or unfounded factual findings. There was good reason not to give credence to the City's after-the-fact efforts to avoid a reckoning for its patently invalid sign restrictions.

In addition, the district court erred by dismissing Victory's claims under Georgia law with prejudice. Victory filed in state court wand brought multiple well-founded state claims. Victory has not had its day in court as to those claims. Reversal is warranted.

25

DATED this 28th day of February, 2024.

Respectfully submitted,

BY:   */s/ E. Adam Webb*
       E. Adam Webb
        Georgia Bar No. 743910
       G. Franklin Lemond, Jr.
        Georgia Bar No. 141315
       WEBB, KLASE & LEMOND, LLC
       1900 The Exchange, S.E.
       Suite 480
       Atlanta, Georgia 30339
       (770) 444-9325

       *Attorneys for Plaintiff-Appellant*

## **CERTIFICATE OF COMPLIANCE**

I certify that this motion complies with the type-face and volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7) as follows: the type face is Times New Roman, proportionally spaced, fourteen-point font, and the number of words in this brief is 5,962, which is less than the limitation of 13,000.

*/s/ G. Franklin Lemond, Jr.*
G. Franklin Lemond, Jr.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ G. Franklin Lemond, Jr.*
G. Franklin Lemond, Jr.
